

Villanova University School of Law
Villanova University School of Law Digital Repository

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-18-2005

# Oliver v. Moore

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1540

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Oliver v. Moore" (2005). *2005 Decisions.* Paper 685.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/685

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 04-1540
_____

LORENZO OLIVER,

Appellant
v.

AD T. MOORE, Administrator of East Jersey State Prison;
ROB ROBINSON, Captain at East Jersey State Prison;
ED GARRETT, Employee at East Jersey State Prison;
CATHEL, Asst. Superintendent at East Jersey State Prison;
WOODS, Social Worker at East State Jersey Prison;
BURNS, Correction Officer at East Jersey State Prison

_____

On Appeal From the United States District Court
For the District of New Jersey
(D.N.J. Civ. No. 00-cv-05683)
District Judge: Dennis M. Cavanaugh
_____

Submitted Under Third Circuit LAR 34.1(a)
APRIL 20, 2005

Before: ROTH, MCKEE AND ALDISERT, <u>Circuit Judges</u>.

(Filed: August 18, 2005)

_____

OPINION

_____

PER CURIAM

Lorenzo Oliver, an inmate of the East Jersey state prison (EJSP), filed a § 1983 complaint in November 2000, which he amended in January 2003, alleging that the defendants retaliated against him for filing a civil suit against the New Jersey prison system from March 2000 through May 2000, by (1) preventing him from visiting his sick mother and from attending her funeral (Count I - defendants Robinson and Cathel); (2) removing about $25 from his prison inmate account for commissary items that he never received (Count II - defendant Garrett); (3) subjecting him to torture with an "electrical device" which affected anything made of metal in his cell, including his bunk bed (Count III - defendants Moore and Robinson); and (4) filing false disciplinary charges against him that were later dismissed (Count IV - defendant Barnes). He claimed that the alleged electrical torture by defendants Robinson and Moore also violated his Eighth Amendment rights and denied him access to the courts. He sought injunctive relief and damages.[1]

The defendants moved for summary judgment, claiming non-exhaustion of the retaliation claims, and that, even assuming exhaustion of the torture claim, it should be dismissed on its merits. In reply, Oliver argued substantial compliance with the prison's administrative remedy process, contending that he properly exhausted all of his claims, although he did not follow the inmate grievance procedure by using the prescribed

---

[1] By order entered May 29, 2001, the District Court denied Oliver's motion for a injunctive relief. Oliver is not appealing this order.

"administrative remedy form" (ARF) in every instance.  He claimed that "it shouldn't matter what particular paper a complaint is written on" as long as the defendants were aware of the alleged constitutional violations.  He also claimed that in 1999, he was placed in segregation when he attempted to have the ARF signed by the required prison authority, and that ever since, he has placed his ARFs in the Administrative mailbox instead of delivering them to the custody supervisor.  The District Court granted summary judgment in favor of the defendants on Counts I, II, and IV for failure to exhaust and dismissed those claims without prejudice.  The District Court granted summary judgment on the torture claim on the merits, ruling that Oliver failed to produce any evidence to suggest that an electrical device was used upon him, or that Moore or Robinson were in any way involved.  Oliver timely appealed.

We review de novo an order granting summary judgment.  Saldana v. K Mart Corp., 260 F.3d 228, 231 (3d Cir. 2001).  Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmovant, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Id. at 232; Fed. R. Civ. P. 56(c).  Once the moving party has carried the initial burden of showing that no genuine issue of material fact exists, the "nonmoving party cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact."  Pastore v. Bell Telephone Co. of Pennsylvania, 24 F.3d 508, 511-12 (3d Cir. 1994).  Rather, the nonmoving party "must make a showing sufficient to

3

establish the existence of every element essential to his case, based on the affidavits or by the depositions and admissions on file." Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir. 1992).

We will affirm the District Court's judgment on Count III substantially for the reasons set forth in the District Court's opinion. Oliver admitted in his deposition that he had no basis for alleging that Moore or Robinson were involved in his alleged torture except his belief that they were. Oliver's belief is insufficient evidence to support his claim, and thus we find that the District Court properly granted summary judgment in the defendants' favor. As for Counts I, II, and IV, we will affirm the District Court order granting summary judgment and dismissing these claims for non-exhaustion, as further discussed below.

The Prison Litigation Reform Act of 1995 ("PLRA") prohibits an inmate from bringing a civil rights suit alleging specific acts of unconstitutional conduct by prison officials until the inmate has exhausted available administrative remedies. 42 U.S.C. § 1997e(a) (2001). The exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered by the administrative procedures." Booth v. Churner, 523 U.S. 731, 741 (2001); see also Nyhuis v. Reno, 204 F.3d 65, 78 (3d Cir. 2000) (explaining that "the PLRA amended § 1997e(a) in such a way as to make exhaustion of all administrative remedies mandatory–whether or not they provide the inmate-plaintiff with the relief he says he desires in his federal action"). A prisoner must

properly exhaust administrative remedies or risk procedural default. See Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). To determine whether a prisoner has properly exhausted administrative remedies, the court looks to the prison grievance procedure, not federal law. Id. at 231. However, "[c]ompliance with the administrative remedy scheme will be satisfactory if it is substantial." Spruill, 372 F.3d at 232 (quoting Nyhuis, 204 F.3d at 77-78); Cf. Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000).

In support of their motion for summary judgment, the defendants submitted an affidavit indicating that a search of the files and databases containing ARFs and inmate request forms revealed no such forms from Oliver alleging the same retaliatory acts complained of in this case. The defendants also submitted the affidavit of Terrance Moore, Administrator of the EJSP, stating that a search of his records revealed no correspondence from Oliver concerning the alleged retaliatory denial of hospital and funeral visits, the alleged retaliatory removal of money from Oliver's prison account, or the alleged retaliatory filing of false disciplinary charges. Oliver, however, submitted a letter to Commissioner Terhune regarding the denial of a hospital visit, stating in pertinent part that "[t]he Administration is retaliating against me for filing a (sic) appeal at the State Appellate Court in Oliver v. Department of Corrections," see Appellant's Brief at PA 9, letters to Garrett, Moore, and Terhune regarding money taken from his inmate account in retaliation for his having filed a civil rights complaint in state court, Id. at PA 12, PA 15, and PA 16, and an incomplete ARF addressed to Moore and dated May

5

24, 2000, regarding false disciplinary charges allegedly imposed to "punish" Oliver for filing an answer to the prison's motion to dismiss his civil rights case, see Oliver Affidavit in opposition to motion for summary judgment (Docket # 76), at PA 123.

The Defendants countered that even if the afore-mentioned letters were sent to Garrett, Moore, and Terhune, they do not comply with the EJSP remedy procedure because he failed to use the proper ARF. They maintain that Oliver has not substantially complied because he failed to file ARFs for Counts I, II, and IV prior to filing suit. Finally, the defendants contend that the letters do not mention the retaliatory conduct alleged in the complaint and fail to identify the defendants by name.[2]

According to EJSP's provision in the "Inmate Handbook," entitled "Administrative Remedy (Inmate Grievance)," the prison grievance process provides "an avenue for all inmates to express their problems knowing that a complaint will be investigated by an appropriate staff member." Appellees' App. at Sa5. The inmate completes a multi-part ARF, and submits the ARF to his custody supervisor, who signs and dates the ARF and returns a copy of the signed and dated form to the inmate. Id. Every attempt at resolving the matter at the housing unit or departmental level should be made before resorting to the Administrative Remedy process. Id. The Handbook does not provide an investigation process or set any time limits for filing an ARF or for

---

[2] Contrary to the defendants' assertion, Oliver's letter/complaints pertaining to Counts I, II and IV, all mention retaliation as the motive for the conduct complained of.

responding to one. There is no express provision in the Handbook for appeal or review by an ultimate administrative authority.[3] And, there is no requirement that the inmate identify in the ARF the parties against whom he complains.

The District Court summarily dismissed Counts I, II, and IV without addressing the issue of Oliver's substantial compliance. Oliver's submissions appear to contradict the defendants' assertions that they did not receive any correspondence with regard to the incidents alleged in Counts I, II, and IV, and arguably raise a question of fact. Viewing the facts in the light most favorable to Oliver and assuming that the letter/complaints were in fact delivered to their intended recipients, however, we conclude that the letter/complaints do not constitute substantial compliance because there is no evidence that the prison's administrative remedy was not available.

The availability of administrative remedies to a prisoner is a question of law. See Ray v. Kertes, 285 F.3d 287, 291 (3d Cir. 2002). The PLRA does not require exhaustion of all remedies. Rather it requires exhaustion of such administrative remedies "as are available." 42 U.S.C. § 1997e(a); Camp v. Brennan, 219 F.3d at 281. An administrative remedy may be found to be unavailable where a prisoner is prevented by prison

---

[3] The absence of an express provision detailing a review process apparently has resulted in some confusion about the availability of review in this case. Although the defendants maintain that exhaustion of administrative remedy is complete upon the return of the ARF by the appropriate supervisor, Oliver is under the impression that he may appeal a denial to the Administrator and then to the Commissioner. See Appellant's Brief, at 11.

7

authorities from pursuing the prison grievance process. See e.g., Camp 219 F.3d at 280-81 (finding that inmate put on grievance restriction); Brown v. Croak, 312 F.3d 109, 112 (3d Cir. 2002) (noting that prison security officials told inmate he must wait to file a grievance until the investigation was complete). And, as we held in Camp, prison authorities may also waive the exhaustion requirement if the ultimate administrative authority fully examines the inmate's complaint on the merits, regardless of whether the complaint complied with the prison grievance process or not. See 219 F.2d at 281.

In Oliver's case, we find no record evidence indicating that the defendants prevented him from using the administrative remedy provided in the Inmate Handbook. Oliver claims that he had problems getting his ARF's filed in 1999, but he does not claim that the defendants prevented him from filing ARFs at any time in 2000. In fact, the record shows that Oliver successfully filed ARFs in August 1999, and in April, June, July, August, and September 2000. See Appellees' App. at Sa10-Sa21. All of the ARFs were duly investigated and disposed of by the administrative authority. Id. Because the Handbook sets no time limit for filing an ARF, it appears that Oliver could have filed ARFs regarding the incidents complained of in Counts I, II, and IV at any time. Undoubtedly, the EJSP Administrative Remedy process was available to Oliver throughout 2000. Moreover, Oliver does not claim, and we find no record evidence that the defendants waived the exhaustion requirement by rendering a ruling on the merits of his complaints.

8

For the foregoing reasons, we will affirm the District Court's judgment.